

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00162-CR

SHAYE JOHNSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2012-471,559, Honorable Drue Farmer, Presiding

April 9, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Shaye Johnson, appeals the trial court's judgment finding him guilty of misdemeanor assault[1] and imposing a punishment of 364 days in the Lubbock County Jail and a $4,000 fine. On appeal, he brings to this Court one point of error, contending that the evidence is insufficient to sustain said conviction. We will affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2013).

## Factual and Procedural History

On the evening of August 25, 2012, an argument occurred between appellant and his pregnant girlfriend of several years, Paige Johnson. Also at the house where the argument began were Paige's older sister, Erica Shumaker, and Erica's husband, Aaron Shumaker. We know from the record that Erica ultimately called 911 to summon police assistance, reporting that appellant had assaulted Paige. The precise details of the interaction between appellant and Paige are mired in the conflicting accounts from a reluctant complaining witness and the accounts from the two other witnesses at the scene, accounts which are not clear and not entirely consistent with one another. Officer Cade Reddish of the Lubbock Police Department was one of the responding officers and testified at trial. The details of the witnesses' testimony will be described more fully in our later evaluation of the evidence.

By the end of the evening, appellant had been arrested for assault. A Lubbock County jury found him guilty of the charged offense and assessed punishment at 364 days in the Lubbock County Jail and a fine of $4,000. On appeal, appellant advances one point of error, challenging the sufficiency of the evidence to support his conviction.

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in

character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

## Analysis

Again, appellant challenges the sufficiency of the evidence supporting his conviction for the assault on Paige. In support of his position, he maintains that "[t]he drastically inconsistent testimony of the State's two primary witnesses was so disparate that no rational jury could have believed them to establish guilt beyond a reasonable doubt." He also contends that "[t]he alleged victim in the case was unreliable as a witness in the case due to her changing story and admi[ssion] that she lied to officers."

### The Evidence

The jury heard Reddish's recording of the accounts of Paige, Erica, Aaron, and appellant at the scene. It also heard Reddish's recollections of each person's account

3

at the scene.  Paige, Erica, and Aaron testified at trial, enabling the jury to hear each witness's recollection of the night and evaluate any inconsistencies between the accounts at trial and the accounts of the events on the night of August 25, 2012.

*Paige*

Twenty-year-old Paige came to the courthouse with appellant on the first day of trial.  She testified that she and appellant had been a couple for several years and remained a couple at the time of trial.  She admitted that she did not want to be at trial that day and explained that she thought that it was unnecessary for this matter to be taken to trial, that the proceeding was "pointless."  She testified that she was angry at Erica for calling police that evening and explained that Erica was "crazy" and had a habit of making false reports to the police.  Initially, Paige could not recall whether she and appellant were arguing on the evening of August 25, 2012, but later she recalled that they were, in fact, in a strictly verbal argument.  She consistently denied throughout her testimony that appellant ever grabbed her, hit her, or otherwise contacted her in a physically violent manner.  She denied, too, that appellant ever tried to kick in the front door or issued any threats against her or her family.

She recalled having talked to officers on the evening in question, but she did not recall what she had told them.  She added, however, that, if she had reported to officers that appellant hit her, she had lied to them at the scene, probably because she was mad.  At trial, she explained that she and appellant simply started arguing and he walked outside.  She did admit that, because she was mad at appellant, she had thrown juice on him before he walked outside or, perhaps, tried unsuccessfully to walk outside

4

over the now-slippery floor. She testified that he may have gone back into a bedroom instead. She remained in the kitchen.

She confirmed that she had an injury to her lip that day but did not recall what type of injury it was or how she got it. She claimed that she was unaware of the injury until the police pointed it out to her. She did recall having told the officers at the scene that she often picks at her lips and causes them to bleed. She testified that the officer did not believe her when she mentioned that at the scene. She also testified that she had gotten mad at appellant earlier that day over an incident relating to a girl at the mall; she characterized herself as "the jealous type" and "actually bipolar."

*Erica*

Erica testified that she was cooking at the house when an argument began between appellant and Paige. Erica recalled the argument beginning in the direction of a bedroom in which appellant and Paige were located and there being "a lot of banging around." She recalled that Paige came out of the bedroom and that appellant also came out and went into the living room. Paige got angry and threw juice as she stood in the doorway of the bedroom. After Paige threw the juice, appellant grabbed Paige by the hair and pulled her into the living room. There, Erica said, appellant hit Paige in the face several times—perhaps even more than ten times—with a closed fist. She testified that appellant was hitting Paige "pretty hard" and causing a "big bump" and a bruise to start to form under her eye. Paige, who looked to be in pain, was raising her hand in an effort to push him away from her. Appellant leaned Paige over the couch and continued

5

to punch her in the face and stomach. She described Paige as trying to cover her stomach to protect herself from appellant's punches. Scared, Erica then called 911.

Erica testified that appellant threatened to kill them all, just as he had threatened in the past. Appellant had left the house for a short time, but he returned, proceeded to kick in the front door, and regained entry into the house where he continued his threats against them. She testified that she did report to the responding officers that appellant threatened them that day.

*Aaron*

At trial, Aaron testified that appellant and Paige were in a dating relationship and that Paige was pregnant with appellant's child at the time. He recalled that there had been some arguing between appellant and Paige that day but did not recall the topic of disagreement. He was in his room when he first heard the verbal disagreement begin between the couple in the living room. He testified that, as he came out of the bedroom and into the living room on his way outside to smoke a cigarette, he heard the argument continue and saw appellant "punch [Paige] in the jaw." He explained that the juice incident happened right before the verbal exchange took place between the couple. He confirmed that Paige threw the juice in appellant's direction, though Aaron was uncertain whether Paige threw it directly at appellant and whether any juice actually contacted him.

Aaron admitted that there were "some parts where I wasn't paying attention, and parts [he] was," so he could not be certain that appellant's blow to Paige's jaw was the first blow. He did not witness Paige strike a blow at appellant. Of the portion of the

6

altercation to which he was paying attention, he observed appellant hit Paige in the jaw with a closed fist and hit her in the stomach with either a closed or open fist. Aaron described Paige's reaction to being hit in the jaw as one in which her head "whipped back" somewhat to the side and backward. He testified that it appeared that Paige experienced pain as a result of that blow. He also testified that, when appellant then hit her in the stomach, Paige doubled over with her forearms over her abdomen for a "second" but then stood back up. Aaron qualified his account of appellant's blow to Paige's stomach because he was not able to view it fully; rather, he was off to the side when he witnessed the blow to her stomach. Aaron added that, either that night or a night following shortly thereafter, the expectant Paige began to bleed and had to be rushed to the hospital.

After the blows that Aaron saw, appellant again approached Paige who, Aaron testified, put her hands up in an attempt to push him back or halt his advance toward her. Again, explaining that he was not paying very close attention, he was not certain whether Paige ever actively pushed him away from her. After seeing appellant hit his pregnant sister-in-law twice, Aaron "turned around and walked out," presumably to go smoke the cigarette he first came from the room to do. He explained that his back hurt that day and he did not want to "get into anybody else's business." He acknowledged that he thought the assault on Paige was "wrong" but "wanted them to handle it themselves." Aaron testified that, at some point after appellant assaulted Paige, appellant went outside. One of the three remaining occupants locked the door apparently, and appellant, wishing to regain access to the residence, kicked in the front door, which Aaron would later repair.

Aaron testified that he did report to the police that appellant had also grabbed Paige by her hair, but he was uncertain whether he independently remembered that fact at trial because he does not "really keep things in [his] mind that much." He does confirm, though, that, as he sat on the stand, he independently recalled seeing appellant hit Paige in the face. Unlike Erica, who had testified that she was scared, Aaron testified that what he saw that day did not alarm him that much.

*Officer Reddish*

Reddish testified that, at the scene, appellant denied having hit Paige but admitted to having grabbed her by the neck. That night at the scene, Paige reported to Reddish that appellant had assaulted her, that he had punched her. She also demonstrated to Reddish how appellant had hit her by twice punching her own closed fist into her open palm. As he was talking with Paige, he noticed that the left part of her lower lip was swollen and was bleeding on the inside, an injury he described as consistent with having been the result of a hit to the face with a closed fist. Reddish testified that a crime scene officer was unavailable at that time to come out and take higher resolution images of Paige's injuries, but he documented the injury to her lip by recording it on his in-car video recording equipment. Frames of the video, in addition to the video itself, were introduced to show that Paige had a laceration to the inside of her lip that night. Though it is not clearly visible in the images, Reddish testified that, earlier in the evening, there had been blood coming from the laceration.

At trial, Reddish did not recall that Erica had reported to him that appellant had threatened them that evening. He also did not recall that there was damage to the front

8

door consistent with Erica's and Aaron's accounts of appellant kicking at the front door. After referring to his report, however, Reddish did note that Erica had reported to him that appellant threatened to "whip all of y'all."

The jury also heard a recording of Erica's call to 911 that evening and the Lubbock County Jail's recording of a phone call between appellant and Paige recorded the day after the incident in which appellant said to Paige something to the effect of the following: If you did not say anything to them, then they cannot do anything; if you did say something, then you screwed me.

Discussion

As is apparent from the record, there are inconsistencies regarding the precise sequence of events that night and some details regarding the altercation. For instance, we cannot ascertain with certainty how many times appellant struck Paige, and Paige denied at trial that appellant struck her at all that night. Though mostly immaterial with respect to the charges brought against appellant, whether appellant kicked in the front door to regain entry to the house is likewise uncertain, as is the exact nature of the threats he made to the family upon regaining entry to the house. Aaron even conceded that his memory of the events may be somewhat "iffy" due his failure to pay very close attention to the entire exchange and his poor memory. Viewing the evidence in the requisite favorable light and examining it for elements of the charged offense, however, we will conclude that, despite the inconsistencies, the evidence was sufficient, such that the jury could have rationally found the elements of assault beyond a reasonable doubt. Appellant was charged with assault, meaning that the State had to prove beyond a

reasonable doubt that appellant intentionally, knowingly, or recklessly caused bodily injury to Paige. *See* TEX. PENAL CODE ANN. § 22.01(a)(1).

The witnesses' accounts—though inconsistent in some respects—were nevertheless consistent in describing an assault by appellant on Paige. Though, at trial, Paige repeatedly denied that appellant struck her at all, the jury was in the best position to weigh her credibility on the stand and her subsequent recantation of her initial report to officers that evening that appellant had, in fact, punched her. The evidence confirms that she did have an injury to her lip that was consistent with her own initial account of having been punched with a closed fist. Witness testimony also described appellant as having punched Paige with a closed fist in her face. Both Erica and Aaron described appellant striking Paige and Paige's reactions as indicative of her experiencing pain as a result of those blows. Paige, who initially reported that appellant had punched her, later denied even knowing of the injury to her lip until the officers pointed it out to her at the scene. Paige's alternate explanation that her habit of picking at her lip caused the laceration and bleeding inside of her mouth was put before the jury, which obviously rejected it.

And such was its province to do. It is well-established that resolution of conflicts and inconsistencies in the evidence is the province of the jury as trier of fact. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh'g); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979). Such conflicts will not call for reversal so long as there is enough credible testimony to support the conviction. *Bowden*, 628 S.W.2d at 784. Because resolution of conflicts or inferences therefrom lies within the exclusive province of the jury, it may choose to believe all, none, or some

of the evidence presented to it. *See Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc). The jury is also the exclusive judge of the credibility of witnesses. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (en banc) (per curiam). Here, there is sufficient evidence from which the jury could determine that appellant assaulted Paige. We overrule appellant's sole point of error.

Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Do not publish.